UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JIMMY WATTS,

    Plaintiff,

v.                                                  Case No. 8:22-cv-840-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.
_____/

**ORDER**

    Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.  Procedural Background**

    Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 274-83). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 189-208). Plaintiff then requested an administrative hearing (Tr. 209-10). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 93-148). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly

denied Plaintiff's claims for benefits (Tr. 7-28). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6). Plaintiff appealed that decision to the district court, which reversed and remanded the decision upon the Commissioner's unopposed motion for entry of judgement with remand (Tr. 963-65). Upon remand, the Commissioner vacated the first administrative decision and remanded the case to a new ALJ for further proceedings (Tr. 966-71). Thereafter, a second administrative hearing was held (Tr. 871-930). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled from February 28, 2014 to January 18, 2018 (Tr. 844-70).[1] Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1965, claimed disability beginning February 28, 2014 (Tr. 274-83). Plaintiff attended the twelfth grade but did not earn a high school diploma (Tr. 103, 301). Plaintiff's past relevant work experience included work as an automobile mechanic (Tr. 174, 860). Plaintiff alleged disability due to multisequence T1 and T2 on left knee, pain in the right knee, spasms in the lower back, and impaired vision (Tr. 300, 310, 342, 897, 902-03).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2019 and had not

---

[1] On January 30, 2019, while the initial appeal to the district court was pending, Plaintiff filed a new application for DIB and SSI benefits (Tr. 848). Plaintiff was found disabled as of January 18, 2018 (Tr. 848).

2

engaged in substantial gainful activity during the relevant period, from February 28, 2014, the alleged onset date, to January 18, 2018 (Tr. 850). After conducting two hearings and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: morbid obesity, left knee medial and lateral meniscus tears with intra-articular effusion, osteoarthritis of the bilateral knees, bilateral capsulitis of the ankles, degenerative disc disease of the lumbar spine, sciatica, glaucoma of the right eye, and right eye visual impairment resulting in monocular vision of the left eye (Tr. 851). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 851). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work except Plaintiff was limited to frequent bilateral operation of foot controls; occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, and crouching; never crawling; frequent exposure to unprotected heights and vibration; occasional exposure to moving mechanical parts; required a sit/stand alternative or the ability to alternate positions after a period of 30 minutes; required the use of a cane for ambulation; and monocular vision of the left eye (Tr. 853). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity,

persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 858).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past relevant work (Tr. 860). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a storage facility clerk, mail clerk, and bottle packer (Tr. 888-89). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 861).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520,

416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the ALJ that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the ALJ's decision with deference to the factual findings, no such deference is given

to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the ALJ's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The ALJ's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the ALJ are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

### III.

Plaintiff argues that the ALJ erred by failing to include limitations to Plaintiff's vision caused by floaters in his left eye in her hypothetical to the vocational expert. For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as

to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3), 416.929(c)(3)(i)-(vii), 416.945(a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

As indicated, in addition to the objective evidence of record, the ALJ must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence.[2] *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304, at *2. However, a claimant's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. 42 U.S.C. § 423(d)(5)(A). To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see* 20 C.F.R. §§ 404.1529, 416.929. Consideration of a claimant's symptoms thus involves a two-step process, wherein the ALJ first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p, 2017 WL 5180304, at *3-9. If the ALJ determines that an underlying physical or mental impairment could reasonably be

---

[2] The regulations define "objective evidence" to include evidence obtained from the application of medically acceptable clinical diagnostic techniques and laboratory findings. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Additionally, the regulations define "other evidence" to include evidence from medical sources, non-medical sources, and statements regarding a claimant's pain or other symptoms, including about treatment the claimant has received. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Moreover, the regulations define "symptoms" as a claimant's own description of his or her physical or mental impairment. 20 C.F.R. §§ 404.1502(i); 416.902(n).

expected to produce the claimant's symptoms, the ALJ evaluates the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, at *3-9. When the ALJ discredits the claimant's subjective complaints, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation omitted). A reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *see Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam) (citation omitted).

If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work, a finding of not disabled is warranted. *Phillips*, 357 F.3d at 1239. Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted. *Id.* At this step, the burden temporarily shifts to the Commissioner to show other jobs exist in significant numbers in the national economy which, given the claimant's impairments, the claimant can perform. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018); *see Foote*, 67 F.3d at 1559; 20 C.F.R. §

404.1520(a)(4)(v). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227 (citation omitted). There are two avenues by which an ALJ may determine a claimant's ability to adjust to other work in the national economy: namely, by applying the Medical Vocational Guidelines and by using a VE. *Phillips*, 357 F.3d at 1239-40. Typically, where the claimant cannot perform a full range of work at a given level of exertion or where the claimant has non-exertional impairments that significantly limit basic work skills, the ALJ must consult a VE. *Id.* at 1242. The regulations anticipate the ALJ's reliance on the VE for his or her knowledge and expertise and explicitly state a "vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).

If the ALJ utilizes the testimony of a VE, the ALJ must pose an accurate hypothetical to the VE that accounts for all of the claimant's impairments. *Ingram*, 496 F.3d at 1270 (citation omitted). When the ALJ properly rejects purported impairments or limitations, the ALJ need not include those findings in the hypothetical posed to the VE. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported"). For a VE's testimony to constitute substantial evidence, however, the ALJ must pose a

10

hypothetical question which comprises all of the claimant's impairments. *Wilson*, 284 F.3d at 1227.

Here, Plaintiff asserts that the ALJ's hypothetical to the VE was not complete because it did not include the limitations to Plaintiff's vision caused by floaters in Plaintiff's left eye. Thus, Plaintiff argues, the VE's testimony does not constitute substantial evidence to support the ALJ's finding at step five. Plaintiff points to treatment notes from April and August 2018, which post-date the relevant period, in support of his argument that there is mention of floaters in Plaintiff's left eye and, thus, there is a reasonable probability that the floaters existed before January 18, 2018. However, Plaintiff does not develop this argument, other than arguing that "there is no reason to disbelieve [his] testimony" (Doc. 18, at 8). As further discussed below, the medical records undermine Plaintiff's allegations of vision impairments caused by floaters in his left eye. Thus, the ALJ reasonably determined that the medical evidence did not support functional limitations from floaters in Plaintiff's left eye.

At the administrative hearing, Plaintiff testified that during the relevant period, he experienced floaters in the left eye (Tr. 904). Plaintiff testified that the floaters would bother him and he would rub his eyes in order to clear them (Tr. 914). Plaintiff also explained that in his past work, he would have to readjust his vision to make sure he was not making a mistake as the floaters caused breaks in his concentration (Tr. 914).

Noting Plaintiff's complaints, the ALJ stated that she would further develop the record and ask an ophthalmologist to review Plaintiff's treatment records and opine as to whether Plaintiff had functional limitations to his vision during the relevant period (Tr. 929). Plaintiff's treatment records were reviewed by Dr. Asher Neren, who opined that Plaintiff had traumatic glaucoma of the right eye and central retina vein occlusion in the right eye (Tr. 1238). Dr. Neren noted that although Plaintiff's impairment affected his vision, he was able to avoid ordinary hazards in the workplace, he could read very small print and newspaper print, he could view a computer screen, and determine the shape and color of small objects (Tr. 1234). Dr. Neren opined that Plaintiff had some functional limitations as a result of his vision impairment in the right eye, including decreased depth perception, which was permanent, and should avoid unprotected heights, moving mechanical parts, operating a motor vehicle, and performing activities requiring fine motor detail (Tr. 1240). Plaintiff responded to Dr. Neren's report that it was inconclusive as to whether floaters affected Plaintiff's visual acuity in his left eye (Tr. 1156). Thus, the ALJ held a supplemental hearing with a medical expert and ophthalmologist to address Plaintiff's complaints of floaters (*see* Tr. 848).

The medical expert ophthalmologist, Dr. Lawrence Reese, testified that Plaintiff had full vision in his left eye (Tr. 878). Dr. Reese described floaters as follows:

> Yeah. I mean myself suffer from floaters and have for the last 45 years. So if you look at the way the eye is structured, in the front of the year [sic], you've got a reflective surface which is clear, we call the cornea. And then you go further back, you have the lens in the eye, which

> becomes cloudy during one's lifetime and that commonly is known as a cataract. Between the lens, we call it the posterior cavity, they eye is filled with something called vitreous, V-I-T-R-E-O-U-S. And those vitreous fibers tend to disintegrate during one's lifetime and as they disintegrate, they become visible to us. They can look like bugs, spiders, blots, and they tend to move with *eye* movement. The analogy I often use is at Christmas time, you can buy these little decorative paperweights with that Santa Clause or reindeer and you turn them upside down and it snows and as you put it down on the tabletop or wherever, the snow settles. Well, the back of the eye, the posterior chamber, has vitreous and as that vitreous changes during one's lifetime, light coming into the eye will cast a slight shadow. And it comes in different shapes and sizes and that is very, very common. Most people get them during their lifetime. Usually it's in their -- usually in the third or fourth decade in life, these flashing lights mean that as that vitreous is shrinking. Sometimes it pulls away from the retina and when it does, it creates a mechanical force which will give you a flashing light. When we learn of that complaint from a patient, we ask them to come in and make sure there's no tear in the retina from the traction of the liquid. That happens about ten percent of the Time.

(Tr. 880-81). Dr. Reese stated that floaters in one eye should not affect the ability to read (Tr. 882). When asked if floaters can affect vision, Dr. Reese responded:

> It can. It depends where the floater is and, you know, I have not examined him and we're going by the history that you're giving, sir, and the floater could be centrally located. It could be in the blind spot and floaters, over a period of time, not in all cases, tend to diminish as they actually sink to the bottom of the eye must like that little paper weighted Christmas time with Santa Claus and the reindeer in it. It doesn't happen to everybody but there's a lot of people, they can be less noticeable with time.

(Tr. 822). Dr. Reese also testified that according to the medical evidence, Plaintiff maintained an "excellent level of vision in his better-sighted left eye," with 20/20 to 20/25 vision of the left eye and full visual field (Tr. 877-78). Dr. Reese agreed that Plaintiff had functional limitations as a result of his vision impairments in the right eye, including that Plaintiff should avoid climbing ladders, scaffolds, or

climbing to heights, no crouching, no crawling, and no being around or operating high speed machinery (Tr. 879). Then, the following exchange took place between the ALJ and Dr. Reese:

> ALJ: Doctor, I have a question for you. Was there anything contained in the medical record that would indicate where the floaters were located?
>
> ME: No.
>
> ALJ: Was there anything contained in the medical evidence that would indicate how often the floaters were being experienced?
>
> ME: No. I'm not even sure they were specifically documented.

(Tr. 882-83).

The ALJ acknowledged Plaintiff's complaints of sporadic floaters in the left eye (Tr. 856). In fact, the ALJ considered Plaintiff's complaints regarding his vision and even conducted a supplemental hearing with Dr. Reese to address Plaintiff's complaints of floaters (*see* Tr. 848). Treatment notes from May 2017, show that Plaintiff exhibited 20/20 visual acuity in the left eye and denied having flashes or floaters (Tr. 419). The treatment notes also indicate that Plaintiff can drive (Tr. 419). Treatment notes from July 2017 note that Plaintiff had best corrected vision acuity of 20/20 in the left eye (Tr. 842).

Although it was outside of the relevant period, the ALJ noted that Plaintiff had been examined by an ophthalmologist, Dr. Neal Honickman, in August 2018, who diagnosed him with end-stage neo-vascular glaucoma of the right eye with advanced cupping (Tr. 857, 1177). Plaintiff reported having floaters in his vision at that time (Tr. 1177). However, Dr. Honickman noted that Plaintiff's IOP, or eye

pressure, was good in the left eye (Tr. 1177). Dr. Honickman noted that Plaintiff would more likely detect floaters in certain lighting, like looking at the blue sky or white clouds (Tr. 1177). Dr. Honickman only recommended observation for the floaters (Tr. 1177).

There is nothing in the treatment notes post-dating the relevant period that indicates when the floaters first appeared or how long Plaintiff had been experiencing them (*see* Tr. 1177, 1179). Moreover, there is no mention in the record of the existence of floaters in Plaintiff's left eye during the relevant period. Rather, ophthalmologists' treatment notes from the relevant period indicate that Plaintiff either denied experiencing floaters (Tr. 393, 419) or there is no mention of floaters (Tr. 395-402, 839-41). There is also no evidence of retinal tears or detachment in the left eye. Even when Plaintiff complained of floaters in 2018, Dr. Honickman noted that Plaintiff had no retinal tear or detachment (Tr. 1177).

Given the medical evidence, the ALJ properly concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence. Since the ALJ found Plaintiff's statements not entirely consistent with the record, the ALJ did not need to afford Plaintiff's statements regarding the impact of floaters on his vision in his left eye any deference or incorporate them into the RFC or the hypothetical to the VE. *See Gray v. Astrue*, No. 3:10-cv-858-J-34-JBT, 2012 WL 3070913, at *5-6 (M.D. Fla. June 4, 2012) ("Plaintiff's argument appears to assume that the ALJ was required to accept her statements regarding her impairments, and

15

particularly the assertion that she would be absent from work for three to five days a month. However, the ALJ explicitly found that Plaintiff's 'statements, and those of her mother Eddie Mae Gray, concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment.' … Therefore, Plaintiff's second argument is also rejected.") (alterations in original), *report and recommendation adopted*, 2012 WL 3069388 (M.D. Fla. Jul. 26, 2012).

For the reasons stated above, substantial evidence supports the ALJ's RFC finding and the ALJ was under no obligation to include impairment or limitations in the hypothetical that she has rejected as unsupported. *See Crawford*, 363 F.3d at 1161. Thus, the ALJ properly submitted Plaintiff's RFC to the VE.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 14th day of September, 2023.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record

17